UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN ACKLEY,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security,<br><br>    Defendant. | NO. EDCV 08-1880 CT<br><br>OPINION AND ORDER |

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

### SUMMARY OF PROCEEDINGS

On December 17, 2008, Susan Ackley ("plaintiff") filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). On April 7, 2009, plaintiff filed a brief with points and authorities in support of remand or reversal. On June 1, 2009, the Commissioner filed defendant's brief in opposition.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1. Proceedings

On May 23, 2006, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability since May 16, 2006 (TR 82-85)[1] due to bi-polar disorder (TR 103). The application was denied initially and upon reconsideration. (TR 46-50, 54-59.)

On May 23, 2007, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 60.) On June 23, 2008, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 14-31.) The ALJ also considered vocational expert ("VE") (TR 36-40) and medical expert ("ME") (TR 31-36) testimony.

On August 14, 2008, the ALJ issued a decision that plaintiff had the following combination of severe impairments: seizure disorder, asthma, and active polysubstance dependence with mood disorder secondary to polysubstance dependance. (TR 5.) He concluded that she was not disabled, as defined by the Act, and thus was not eligible for benefits because she retained the residual functional capacity ("RFC") to do work of at least a medium exertional level, diminished by several non-exertional limitations, and therefore could perform her past relevant work as apartment manager, meat packer, or home care aide. (TR 3-10.) On August 28, 2008, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 11.) On October 24, 2008, the request was denied. (TR 43-45.) Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

Plaintiff subsequently sought judicial review in this court.

### 2. Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and materially summarizes the evidence in the case.

## PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ did not properly consider:

1. The state agency psychiatrist's opinion;
2. The mental and physical demands of plaintiff's past relevant work;
3. Whether plaintiff can perform her past relevant jobs of apartment manager, meat wrapper, and home health aide; and,
4. The treating psychiatrist's evaluation.

## STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g).

## DISCUSSION

### 1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the

person is unable to perform other work. 20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).

2. <u>Issues</u>

A. <u>State agency psychiatrist's opinion</u> (Issue # 1)

Plaintiff first challenges the ALJ's decision on the basis that he did not specifically address the mental RFC assessment opined by state agency psychiatrist R.B. Paxton, M.D., on August 10, 2006.

While plaintiff is correct that an ALJ must make fairly detailed findings, he "need not discuss all evidence presented to [him]." <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, the ALJ must explain why "significant probative evidence has been rejected." <u>Id.</u> at 1995 (emphasis added). Furthermore, the ALJ is not required to address and discount evidence that is cumulative of other record evidence he evaluated within the decision. See <u>Magallanes v. Brown</u>, 881 F.2d 747, 755 (9th Cir. 1989).

To the extent Dr. Paxton's report was probative of disability, it was, at most, cumulative of other properly discounted evidence.

In the report, Dr. Paxton opined that, as of August 2006 and just two months after plaintiff claimed she stopped regularly abusing methamphetamines, marijuana, and alcohol (TR 6), plaintiff was "not significantly impacted" in virtually all areas of her mental functioning and was only "moderately limited" in her abilities to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; and (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and at a consistent pace without unreasonable rest periods. (TR 182-83.) Dr. Paxton also found that plaintiff had experienced "one or two" episodes of decompensation. (TR

193.)

In his decision, the ALJ concluded that plaintiff's alleged mental impairments were not disabling because they did not result in a "marked" limitation - "more than moderate but less than extreme" - in at least two specified areas of functioning for a sufficient length of time.  (TR 6) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04).  He also found that plaintiff had "experienced one to two episodes of decompensation."  (See TR 6.)  Dr. Paxton's findings do not contradict these conclusions.

Furthermore, the ALJ concluded that whatever problems led plaintiff to seek out treatment for depression and psychosis in the summer of 2006 were ameliorated less than one year later, by January 2007:

> [She] responded well to treatment in 2006, . . . her condition was improved and stable within twelve months of the initial treatment, and . . . [she] stopped treatment shortly after [an] evaluation in April 2007 which found no significant mental limitations despite her ongoing polysubstance abuse.

(TR 6, 7.)

Thus, any mental limitations Dr. Paxton found in August 2006 were, even if viewed generously in favor of plaintiff, cumulative of other record evidence that suggested plaintiff was suffering mental problems that summer after puportedly stopping her regular abuse of drugs and alcohol, and which limitations were ameliorated just five months later.

Accordingly, there is no material legal error here.

Furthermore, the court observes that the record is replete with evidence that plaintiff is, in fact, actively abusing substances.  (See, e.g., TR 27) (plaintiff testified that she used methamphetamine and alcohol only two to three months prior to the hearing).  To the extent the declines in plaintiff's mental functioning are due to continued substance abuse, she is not entitled to benefits.  See 42 U.S.C. 1382c

(a)(3)(J) (2001) (a plaintiff is not considered to be disabled if alcoholism or drug addition is a "contributing factor" in the disability).

B. <u>Evaluation of past relevant work</u> (Issue # 2)

Plaintiff next contends the ALJ erred because he did not make legally sufficient findings of fact with respect to the physical and mental demands of her past relevant work or how her limitations would impact her ability to perform that work.

The ALJ found plaintiff has the RFC to perform medium work, with slight limitations to account for her asthma[2] and her history of polysubstance abuse. (TR 7.) Specifically, he found plaintiff can:

> [P]erform medium work as defined in 20 CFR 416.967(c) except no significant exposure to hazards such as climbing of ladders and scaffolds, dangerous machinery, operation of vehicles, and unprotected heights, and no significant concentrations of pulmonary irritants such as smoke dust and fumes. She should also work in air conditioned work environment. (TR 7.)

Plaintiff has performed the following past relevant work: meat wrapper, flower delivery driver, home health attendant, apartment manager, and grounds keeper. (TR 37-39.)

The VE testified that someone with plaintiff's RFC, for modified medium work, could perform her past work as a meat wrapper, home health aide, and apartment manager as those jobs are described in the

---

[2] The ALJ noted that his decision to restrict plaintiff to medium work and to incorporate asthma-related limitations relating into the RFC was "quite generous." The court concurs. The ALJ found that plaintiff exaggerated the intensity and frequency of her attacks because: (1) treating source records do not document significant treatment or evaluation of asthma; (2) the consultative medical examination findings were negative; and (3) plaintiff reported a treatment pattern less intensive than that alleged at the hearing. (TR 8.)

7

Dictionary of Occupational Titles. (Id.) The VE testified that "meat wrapper" is a medium-exertion level, unskilled job; "home health attendant" is a medium-exertion level, semi-skilled job; "apartment manager" is a light-exertion level, skilled job. (Id.) There is no reason to believe any of these jobs would implicate plaintiff's non-exertional limitations, that is, by requiring plaintiff to climb ladders or scaffolds, operate dangerous machinery or a vehicle, climb to unprotected heights, or that they would expose her to significant concentrations of pulmonary irritants such as smoke dust or fumes.

The ALJ adopted the VE's testimony in the written decision. (TR 10.) The disability decision should be written "so that a clear picture of the case can be obtained." Social Security Ruling 82-62. It should "follow an orderly pattern and show clearly how specific evidence leads to a conclusion." Id. The ALJ's evaluation of plaintiff's ability to perform past relevant work should permit a reviewing court to know clearly what RFC the ALJ found and whether the ALJ compared it to work as actually performed or usually performed. See Pinto v. Massanari, 249, F.3d 840, 847 (9th Cir. 2001).

The decision here is more than adequate to permit judicial review of the basis for the RFC assessment and the finding that plaintiff can perform her past relevant work, and the court finds that these conclusions are based on substantial record evidence and free from material legal error.

    C.   <u>Plaintiff's ability to perform past relevant work</u> (Issue # 3)

Plaintiff also challenges the ALJ's conclusion that she can perform her past relevant work because the jobs of apartment manager, meat

wrapper, and home health aide require reasoning skills that Dr. Paxton opined plaintiff does not possess.

As discussed with respect to issue one, above, the ALJ's conclusion that plaintiff's mental limitations "improve with treatment" (TR 7) and the attendant decision not to incorporate Dr. Paxton's diagnosed limitations into the RFC are supported by substantial evidence and free from material legal error. Accordingly, the court likewise finds no material legal error here.

D.  2008 Psychiatrist's evaluation (Issue # 4)

Plaintiff next contends that the ALJ erred because he misread and did not give appropriate weight to the report of an employee of the San Bernardino County Department of Behavior Health, with whom plaintiff met in April 2008. (The "2008 treatment report").

The employee, whom the ALJ pointed out was not clearly identified as a qualified medical source (TR 9, 263-64), opined that plaintiff has bi-polar disorder. (TR 264.) The ALJ found that this conclusion was entitled to no weight. (TR 6, 9.)

First, the court observes that this treatment report does not suggest any functional limitation that has or is expected to last for more than twelve months and that would prevent plaintiff from engaging in work. See 42 U.S.C. 1382c (a) (3) (requiring plaintiff to establish a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," in order to receive benefits).

In any event, the ALJ discounted the 2008 treatment report first because it was premised in part upon the examiner's erroneous understanding that plaintiff does not use drugs. (Id.) The ALJ

concluded that plaintiff, whom he found not to be credible and honest overall (Tr 7-9), had "misled" the examiner to believe that she had not been abusing drugs or alcohol, even though she admitted to the intake clinician that she used methamphetamine the day prior to the intake evaluation. (TR 9, 263, 265.) When the evidence before the ALJ is subject to more than one rational interpretation, the court must defer to the ALJ's conclusion. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ discounted the 2008 treatment report for the additional reason that, while it may have indicated that plaintiff experienced another decline in her mental functioning at that time, it was unclear whether that decline was "due to her failure to maintain her psychiatric treatment, her substance abuse, or some combination thereof." (TR 7.) The ALJ concluded that, in any event, "there is no reason to believe that she [would] not improve with treatment as she did in 2006." (Id.)

The 2008 treatment report was contradicted by substantial record evidence that plaintiff did not have bi-polar disorder at any time, including in April 2008. For example, a consultative examination that also took place in April 2008 assessed plaintiff as having no mental impairments other than those associated with her substance abuse. (TR 6, 247.) Therefore, even assuming the challenged examination was by a treating psychiatrist, as plaintiff suggests, the ALJ was required to set out only "significant and legitimate reasons" for discounting the report's conclusion based on substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

The court finds that the ALJ did so and, accordingly, there is no material legal error here.

## CONCLUSION

If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Flaten v. Sec'y of Health and Human Servs.</u>, 44 F.3d at 1457.

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: June 10, 2009

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

11

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Susan Eileen Ackley | Supplemental Security Income |
| (Claimant) | |
| | ▬▬▬▬▬▬▬ |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

On May 23, 2006, the claimant filed an application for supplemental security income, alleging disability beginning May 16, 2006. The claim was denied initially on September 16, 2006, and upon reconsideration on May 3, 2007. Thereafter, the claimant filed a timely written request for hearing on May 23, 2007 (20 CFR 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on June 23, 2008, in San Bernardino, California. Also appearing and testifying were William L DeBolt, M.D., an impartial medical expert, and Alan E. Cummings, an impartial vocational expert. The claimant is represented by Attorney Dan Keenan.

### ISSUES

The issue is whether the claimant is disabled under §§ 1614(a)(3)(A) of the Social Security Act. Disability is defined in the Act as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), I have considered the complete medical history consistent with 20 CFR 416.912(d).

After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Act since May 23, 2006, the date the application was filed.

### APPLICABLE LAW

Under the authority of the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine if the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substan-

See Next Page

 EXHIBIT 3

Susan Eileen Ackley ( ███████ )   Page 2 of 8

tial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine if the claimant has a medically determinable impairment that is "severe" or a combination thereof that is "severe" (20 CFR 416.920(c)). An impairment or combination thereof is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination thereof is "not severe" when medical and other evidence establish only a slight abnormality or a combination thereof that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination thereof, she is not disabled. If the claimant has a severe impairment or combination thereof, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of her impairments, including those that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 416.920(g)), I must determine if the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If she is able to do other work, she is not disabled. If she is not able to do other work and meets the duration requirement, she is disabled. Although she generally continues to have the burden of proving disability at this step, a limited burden of going for-

See Next Page   **EXHIBIT 4**

Susan Eileen Ackley                                     Page 3 of 8

ward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Administration is responsible for providing evidence that demonstrates other work exists in significant numbers in the national economy the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912(g) and 416.960(c)).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1. The issue of whether the claimant has engaged in substantial gainful activity since May 23, 2006, the application date is not material to this decision because of the findings herein below (20 CFR 416.920(b) and 416.971 *et seq.*).**

The claimant's Social Security Earning Record at Exhibit 2D shows that she had earnings posted for the years from 2002 through 2007, but no earnings for the years from 1994 through 2001 except for a nominal amount posted for 1998. None of these earnings were substantial as defined by the Social Security Administration if prorated on a twelve month basis for each year, and further inquiry is not material to this decision in view of the findings herein below.

**2. The claimant has the following severe combination of impairments: seizure disorder, asthma, and active polysubstance dependence with mood disorder secondary to polysubstance dependence (20 CFR 416.920(c)).**

There has been no dispute among treating, examining and reviewing physicians that the claimant's combination of medically determinable physical impairments has resulted in more than slight or minimal limitation of her ability to perform basic physical work-related activities.

As noted below, the claimant has repeatedly complained of diffuse arthralgia. The primary care physician records however do not document any treatment or evaluation of such complaints. Ex. 5F; ex. 11F. At the time of the consultative medical evaluation in March 2007, she reported a history of hand pain and low and mid back pain, relieved with medication and change in position, but the physical examination findings were negative in terms of gait, station, grip strength, ranges of motion, motor function, reflexes, and sensation, and there were no reports of arthritic stigmata or any tenderness over the joints and spine. Ex. 7F. I find that the claimant has not established any musculoskeletal impairment.

**3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

The claimant's asthma has not been associated with any findings of restrictive or obstructive pulmonary disease, and she has not required frequent intensive medical treatment such as emergency room treatments or hospitalizations for her asthma. Her seizure disorder has been controlled with medication.



EXHIBIT 5

Susan Eileen Ackley ▮▮▮▮▮▮▮▮▮▮                                              Page 4 of 8

The claimant's mental impairment does not meet or medically equal the criteria of listing 12.04. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, social functioning, and maintaining concentration, persistence, or pace, the claimant has mild restriction. As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation.

The claimant started treatment of depression and psychosis at the San Bernardino County Department of Behavioral Health in June 2006 at which point she admitted having stopped regular use of methamphetamines, marijuana, and alcohol only thirty days prior to the initial evaluation, and while the formal mental status examination findings were essentially negative except for depressed mood and affect and her self-reported auditory and visual hallucinations, the treating psychiatrist assessed a global assessment of functioning (GAF) score of 45. Ex. 6F at 19-20. By January 2007 however, the claimant's depression was improved and stable, and she reported no medication side-effects;. Ex. 6F at 5. When the claimant saw the consultative psychiatric examiner in April 2008, the claimant admitted ongoing alcohol and drug abuse, but her reported activities and interests were within normal limits as was her formal mental status examination, leading examiner to assess a GAF score of 70, indicating a marginally mild degree of limitation and conclude the claimant had no significant mental work-related limitations. Ex. 8F.

The claimant sought treatment at a San Bernardino County psychiatric facility in April 2008, admitting she had had no treatment since early 2007. Ex. 12F at 6. The formal mental status examination findings were essentially negative except for depressed mood and affect, rapid speech, and self-reported auditory hallucinations. The examiner, who was not identified clearly as a physician or a psychologist, diagnosed bipolar disorder, type I, with psychosis and assessed a GAF score of 47 indicating a marked degree of limitation in one area and otherwise moderate limitation, but it is noted that the examiner indicated the claimant had no history of substance abuse even though the clinician who conducted the intake evaluation had noted that the claimant had used methamphetamines the day before she was seen at the clinic. Ex. 12F at 4 and 6. I find that the claimant has not established she has a bipolar disorder type 1, that she has had more than two episodes of acute decompensation, or that the severity of her mental impairments has been or is expected to be of more than mild severity for any period of twelve or more months even if her ongoing polysubstance abuse is considered.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied. I have also considered whether the "paragraph C" criteria are satisfied and found that the evidence fails to establish the presence of the "paragraph C" criteria.



EXHIBIT 6

See Next Page

Susan Eileen Ackley ( ███ )  Page 5 of 8

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in § 12.00 of the Listing of Impairments (SSR 96-8p).

In this case however, I find that the evidence of record does not support the assessment of any significant mental functional limitations. As noted above, the treating source evidence shows that the claimant responded well to treatment in 2006, that her condition was improved and stable within twelve months of the initiation of treatment, and that the claimant stopped treatment shortly after the consultative psychiatric evaluation in April 2007 which found no significant mental limitations despite her ongoing polysubstance abuse. While she experienced another decline in her mental functioning in 2008, due to either her failure to maintain her psychiatric treatment, her substance abuse, or some combination thereof, there is no reason to believe she will not improve with treatment as she did in 2006. Accordingly, there is no reasonable basis for finding any significant mental limitations that have lasted or are expected to last for any period of twelve or more months.

**4. After careful consideration of the entire record, I find that the claimant has never lost for any significant period of time, and is not expected to do so, the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except no significant exposure to hazards such as climbing of ladders and scaffolds, dangerous machinery, operation of vehicles, and unprotected heights, and no significant exposure to excessive concentrations of pulmonary irritants such as smoke dust and fumes. She should also work in air conditioned work environment.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.



EXHIBIT 7

Susan Eileen Ackley (  Page 6 of 8

When she filed her application, the claimant emphasized that she had a bipolar disorder with anxiety, depression, auditory hallucinations, and paranoid ideation and that she could not concentrate and sometime had problems speaking. Ex. 3E at 2. At this point, she stressed how much trouble she had getting up and getting her six-year old child ready for school although she admitted that she walked the child to and from school regularly as well as saying her grooming had deteriorated in terms of wearing clothes that matched, caring for her nails, and having her hair cut, Ex. 4E She said that her older daughter did the laundry and her mother either had to tell her to do the housework or helped her do it. She indicated that she did not like to go out, but admitted that she could shop as needed, attend church, and keep medical appointments.

Upon reconsideration, she emphasized that her depression and psychosis had deteriorated in September 2006, but for the first time she reported she had had problems with stomach pain and asthma since August 2006. Ex. 8E at 2. At this point, she said that she was taking care of no one although she still lived alone with her children, that her children had to remind her to attend to her grooming and take her medication, that her children helped with the housework, that she only went out twice a day to take her children to school, that she did not go out to shop although she said she spent about fifteen minutes when she did shop, and that she did not socialize although she said she would sit and talk for fifteen minutes when she did, Ex. 12E

When she filed her request for hearing, she indicated that her condition had deteriorated. Ex. 14E. She did not report any new impairments and she indicated that the change in her medical condition had started prior to her request for reconsideration.

At the hearing, the claimant complained of pain in her back, feet, knees, and head and said she had to use medication, albuterol, including inhalers and a machine at home five times a day for her asthma. She admitted she did not have seizures when she took her medication and she said she could not remember when she last had a seizure. She emphasized her problems with depression and anxiety as well as paranoid ideation and daily, life long auditory hallucinations.

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

In terms of the claimant's alleged asthma attacks, I find that the claimant has exaggerated the intensity and frequency of her asthma attacks. The treating source records do not document any significant treatment or evaluation of her asthma, and the consultative medical examination findings at Exhibit 7F were completely negative relative to her pulmonary function and she reported a treatment pattern less intensive than that alleged at the hearing. Given the lack of documentation supporting a longitudinal history of a serious problem with asthma, the finding of a severe impairment and a restriction to medium work is quite generous.

In general the record shows that the clamant has not been honest. The recent mental health records show that she admitted to the intake clinician that she was abusing drugs and alcohol through the day prior to the intake evaluation, but she led the examiner, who not clearly

See Next Page  8

Susan Eileen Ackley Page 7 of 8

identified as a qualified medical source to believe that she had not been abusing drugs or alcohol, which led to the improper diagnosis of bipolar disorder, type 1 and treatment thereof. She also testified at the hearing she could get drunk on one can of beer which is not credible even considering her prescribed psychotropic medications, but it is consistent with her admissions regarding her getting methamphetamines from friends and getting drunk three months prior to the hearing. Given the treatment history noted above, it is reasonable to conclude that the claimant notwithstanding her ongoing polysubstance abuse has been able to function adequately on a day to day basis as indicated by her admissions regarding her being able to walk her children to school and drive as needed for shopping and going out for medical appointments. It is clear that her statements and testimony regarding her physical and mental symptoms and limitations are grossly inconsistent with the records and reports of the treating and consulting medical sources.

I have also considered the statement of the claimant's cousin, Lois M. Hendrickson, dated January 22, 2007, at Exhibit 10E. The affiant indicated that she had known the claimant for forty years and spent eight hours per day talking and visiting with the claimant and that the claimant needed reminders to maintain her grooming, cook meals, and do her housework. The affiant however was unaware of any of the claimant's alleged physical problems, and she did not mention any problems with alcohol or drug abuse. I can give this statement little weight not only because it does not clearly describe serious mental limitations, but it is also inconsistent with the treating source records from January 2007 which indicated that the claimant's mental impairments had improved with treatment and were stable and in need of any further adjustment.

5. **The claimant is capable of performing past relevant work as an apartment manager, a meat wrapper, and a home health aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).**

The claimant's past work as a meat wrapper was performed for a prolonged period of time through early 1993 as reflected by her Social Security Earning Record at a level that was clearly substantial gainful activity. Since the above-noted fifteen year rule is not a hard and fast rule, I find that such work was vocationally relevant at least through the date of this decision

While the wages paid the claimant as an apartment manager were not substantial as defined by the Social Security Administration, the vocational expert testified that such work is vocationally relevant work since it was essentially full time work performed for a prolonged period of time through 2007 with increasing earnings throughout her employment at her job and the officially reported earnings did not reflect the value of her apartment rental notwithstanding her implausible allegations regarding her having to pay rent while performing such work. Accordingly, I find that this is past relevant work.

While the claimant has described her past work as a hospice worker as self-employment involving twenty hours of work per week and paying only $200.00 per month, the vocational expert described this as past relevant work. Given the fact that the claimant engaged in this work for over a year, I find the vocational expert's findings quite reasonable. I also note that the claimant's description of her earnings and hours would suggest her average hourly earnings were

See Next Page  9

Susan Eileen Ackley ███ Page 8 of 8

extremely low and it is more reasonable to conclude that she was earning $200.00 per week. In any case, I find that this was and stilly is vocationally relevant work

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it at least as generally performed as per the testimony of the vocational expert.

**6. The claimant has not been under a disability, as defined in the Social Security Act, since May 23, 2006 (20 CFR 416.920(f)), the date the application was filed.**

## DECISION

Based on the application for supplemental security income filed on May 23, 2006, the claimant is not disabled under § 1614(a)(3)(A) of the Social Security Act.

/s/ *Joseph D Schloss*
Joseph D. Schloss
Administrative Law Judge

August 14, 2008
Date

JJM

EXHIBIT

10